IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

AT HUNTINGTON

LENORE SCARBERRY,

    Plaintiff,

V.                                          CIVIL ACTION NO. 3:05-0310

JOANNE BARNHART,
Commissioner of Social Security,

    Defendant.

## FINDINGS AND RECOMMENDATION

In this action, filed under the provisions of 42 U.S.C. §405(g), plaintiff seeks review of the final decision of the Commissioner of Social Security denying her application for disability insurance benefits. The case is presently pending before the Court on cross-motions of the parties for judgment on the pleadings.

Plaintiff filed her application on May 22, 2003, alleging disability commencing January 5, 2003, as a consequence of chest wall pain, pinched nerve and residual post-surgical pain. On appeal from an initial and reconsidered denial, an administrative law judge, after hearing, found plaintiff not disabled in a decision which became the final decision of the Commissioner when the Appeals Council denied a request for review. Thereafter, plaintiff filed this action seeking review of the Commissioner's decision.

At the time of the administrative decision, plaintiff was fifty-three years of age and had obtained a high school education. Her past relevant employment experience consisted of work

as a secretary, hospital food service worker and housekeeper. In his decision, the administrative law judge found that plaintiff suffered from "degenerative disc disease of the lumbar spine and chronic obstructive pulmonary disease," impairments which he considered severe. Though concluding that plaintiff was unable to perform her past work,[1] the administrative law judge determined that she had the residual functional capacity for a limited range of light level work. On the basis of this finding, and relying on Rule 202.13 of the medical-vocational guidelines[2] and the testimony of a vocational expert, he found plaintiff not disabled.

From a review of the record, it is apparent that substantial evidence supports the Commissioner's decision. Plaintiff has alleged that her disability began in January 2003 and this date coincides with a one-month hospitalization for treatment of, inter alia, pneumonia, a pulmonary abscess requiring surgical drainage, septic shock and a collapsed lung. Plaintiff's follow-up appointments with Dr. Rebecca Wolfer, the thoracic surgeon who treated her, reflect a good recovery. On March 21, 2003, plaintiff reported that she could do whatever she wanted at home and Dr. Wolfer related that she refused to fill out disability forms for plaintiff because she believed she could return to work.

Dr. Steven Batiste at the Holzer Clinic followed plaintiff for this and other general problems such as GERD, hypothyroidism, anxiety and depression. His reports do not reflect ongoing problems related to the hospitalization except for pain at the sites of surgery and particularly in the chest wall. Another physician at the Holzer Clinic, Dr. Glen Imlay, treated

---

[1] This finding had the effect of shifting a burden of production to the Commissioner with respect to other work plaintiff was capable of performing. Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981); McLamore v. Weinberger, 538 F.2d 572, 574 (4th Cir. 1976).

[2] 20 C.F.R. Part 404, Subpart P, Appendix 2, Table No. 2.

plaintiff for this problem with medication, massage and injections which lessened, but did not completely get rid of, the pain, according to her reports. In May of 2003, plaintiff also complained of shoulder pain but related she was getting around better and expressed concern about getting back to work. On June 23, 2003, plaintiff reported she was staying active but had developed back pain beginning a week earlier.[3] Dr. Imlay prescribed physical therapy and medication for this problem but, as with the rib cage pain, these measures did not completely alleviate plaintiff's symptoms, although she did admit they helped some. His findings generally included only tenderness and limited range of motion without neurological deficits, even though plaintiff reported radiation of the pain into her hips and left leg. An MRI taken of the lumbar spine on August 13, 2003, was interpreted as showing disc desiccation and mild narrowing at the L1-2 level and "very minimal" narrowing and desiccation at L4-5 with a small to moderate right "posterior paracentral disc extrusion."[4] Dr. Imlay noted the discrepancy between these findings, which reflect disc bulging on the right, and plaintiff's symptoms on the left. An EMG of the left lower extremity was also interpreted as normal.

On November 3, 2003, Dr. Imlay detected some right shoulder tenderness with "slight" increased sensitivity of the scar there and continued tenderness over the ribs. Plaintiff reported she was trying to stay as active as possible. She participated in physical therapy in early 2004 but claimed that it was of no benefit. She underwent an independent medical evaluation on

---

[3] The medical records indicate that Dr. Imlay had previously treated plaintiff for a work-related back injury which occurred on August 2, 2002. From the medical records, it is appears that plaintiff recovered fairly well from this injury prior to the January 2003 hospitalization.

[4] Extrusion is defined as a pushing out. Attorney's Dictionary of Medicine E-269 (2006).

January 12, 2004, by Dr. Jerry W. Scott who observed diffuse paraspinal tenderness and complaints of pain on the side of the body not being examined. Gait was normal and she could squat and arise without difficulty. He also commented that plaintiff's efforts on strength testing were variable and she exhibited "cog-wheeling."[5] Sensory responses were also variable and she complained of pain and stiffness with all ranges of motion. Dr. Scott's conclusion was that she had a history of lumbar disc herniation by MRI. He recommended evaluation by a neurosurgeon.

Following physical therapy, plaintiff underwent a functional capacity evaluation on February 13, 2004. The evaluator noted she was self-limited on every test item due to subjective complaints, was very emotional and exhibited pain behaviors suggestive of a non-organic origin of the pain. When trying to assess range of motion of the upper extremities, this evaluator noted plaintiff was very guarded and protective and would not allow passive range of motion. She exhibited "cog-wheeling weakness" and very guarded pain behaviors preventing the assessment of strength in either the upper or lower extremities. She also scored five out of five on the Waddell's test for symptom exaggeration. Plaintiff did not give consistent effort on tests where strength or active range of motion were assessed making the sedentary functional level results not valid. Her symptoms through mid-2004 were observed to remain stable.

One state agency medical advisor assessed an ability to perform light level work while a second concluded plaintiff could work at the medium level. Both agreed she should never climb ladders, ropes or scaffolds; however, the evaluator who felt plaintiff was limited to light work also concluded she could only occasionally climb, balance, stoop, kneel, crouch or crawl; needed

---

[5] The intermittent relaxation and stiffening of a muscle which is passively stretched. Attorney's Dictionary of Medicine, supra at C-340.

to avoided concentrated exposure to extreme cold and heat and to fumes, gases, etc.; and, should avoid all exposure to hazards.

After receiving the results of the functional capacity evaluation, Dr. Imlay opined, on March 8, 2004, that plaintiff could return to work at sedentary duty as described in the functional capacity evaluation report.  The administrative law judge concluded, however, that his opinion was not persuasive since the results of the functional capacity evaluation were not a valid measure of plaintiff's abilities.  After considering all of the evidence and evaluating plaintiff's impairments in combination, he determined that the assessment containing a limitation to a restricted range of light level work was more persuasive and adopted it.  In light of the objective test results revealing no disc herniation, clinical findings of no radicular problems, the stable symptoms of mainly tenderness and limited range of motion in the lumbar spine, plaintiff's exaggerated pain behaviors and the absence of any indication of ongoing pulmonary problems, the Court concludes that substantial evidence supports the administrative law judge's findings.

Plaintiff also alleges problems with anxiety and depression.  Dr. Batiste noted on August 6, 2003, she had a long history of depression and anxiety which had recently worsened.  He indicated he spoke with her at length about counseling and psychiatric evaluation but on that date she elected to continue with her medications, one of which he increased.  Three weeks later, plaintiff reported a twenty percent decrease in her symptoms.  Consideration of counseling and evaluation by a psychiatrist were again recommended.  The following month, plaintiff reported further improvement of twenty to thirty percent in her symptoms and Dr. Batiste again urged her to begin counseling and to consider psychiatric evaluation to optimize her antidepressant medication.  While plaintiff told him she would consider this, there is no indication she ever took steps to do it.  About

five weeks later, on November 7, 2003, Dr. Batiste reported further improvement in plaintiff's symptoms and concluded they were stable. His subsequent reports do not document any significant decrease in her mental functioning.

Dr. David Frederick performed a consultative psychological evaluation for the Commissioner on September 21, 2004, and described plaintiff as well-motivated, able to interact well, serious with little sense of humor, teary and anxious with a mildly labile affect. Memory was assessed as within normal limits, although judgment and concentration were felt to be moderately deficient. On I.Q. testing, plaintiff was persistent and focused, and her scores, considered valid, were in the borderline range, with a verbal score of seventy, performance score of eighty and full-scale score of seventy-three. WRAT-3 scores were sixth grade reading level, fourth grade spelling and third grade math level. Dr. Frederick diagnosed generalized anxiety disorder, major depressive disorder, single episode, moderate, and borderline intellectual functioning with a provisional diagnosis of undifferentiated somatoform disorder. In an assessment of plaintiff's mental residual functional capacity, this examiner found moderate limitations on plaintiff's ability to carry out detailed instructions, make judgments on simple, work-related decisions, respond appropriately to work pressures in a usual work setting and respond appropriately to changes in a routine work setting. State agency psychologists who reviewed the evidence concluded plaintiff had no severe mental impairment. They did not, however, review Dr. Frederick's report and assessment.

After considering all of this evidence, the administrative law judge also determined plaintiff did not have a severe mental impairment. In so finding, he took note of her refusal to seek treatment from a mental health professional, the improvement and stability of her symptoms even without such treatment, and her ability to take care of personal needs, cook simple meals, wash

dishes, dust, read and drive. While the evidence is conflicting on this issue, the Court concludes that the administrative law judge's reasoning is persuasive and his finding supported by substantial evidence. In making this finding, the administrative law judge acknowledged that one of plaintiff's I.Q. scores fell within the parameters of Section 12.05C of the Listing of Impairments[6] which provides that a verbal, performance or full-scale I.Q. of sixty through seventy and a physical or other mental impairment imposing "an additional and significant work-related limitation of function" will meet this listing. The administrative law judge reasoned that there was no evidence to indicate the onset of mild mental retardation before age twenty-two as required to meet any of the listings under Section 12.05. He noted that plaintiff's high school education[7] and work experience were not consistent with mild mental retardation. Also, Dr. Frederick's conclusion that she exhibited borderline intellectual functioning instead of mild mental retardation clearly suggests he saw no indication of limited intellect sufficient to meet the 12.05C requirements. The Court again concludes the administrative law judge's findings are supported by the evidence.

While plaintiff alleged significant limitations on her daily activities due to pain, the administrative law judge, taking account of the evidence as well as his observations of plaintiff at the hearing, concluded that her credibility was poor. He relied on the evidence from Dr. Wolfer that plaintiff could return to work as of March 21, 2003, without residual limitations from her hospitalization for pneumonia and surgery for a lung abscess. He also considered the treating physician's reports that plaintiff was very active and performing normal activities at home during

---

[6] 20 C.F.R. Part 404, Subpart P, Appendix 1.

[7] Plaintiff reported to Dr. Frederick that she was in regular classes and made "good" grades.

this time. The objective test results relative to plaintiff's back condition as well as her exaggeration of symptoms and her failure to seek mental health treatment were also persuasive factors noted by the administrative law judge. In view of the evidence, and taking account of the administrative law judge's "opportunity to observe the demeanor and to determine the credibility of the claimant," these findings are entitled to "great weight." Shively v. Heckler, 739 F.2d 987, 989 (4th Cir. 1984). Finally, in response to hypothetical questioning which included plaintiff's age, education, work experience and a reasonably accurate profile of her functional capacity and overall medical condition, a vocational expert testified that there were significant numbers of light and sedentary jobs in the national economy which plaintiff could perform.

Resolution of conflicts in the evidence is within the province of the Commissioner, not the courts, Thomas v. Celebrezze, 331 F.2d 541 (4th Cir. 1964), and if the Commissioner's findings are supported by substantial evidence this Court is bound to uphold the decision. Blalock v. Richardson, 483 F.2d 773, 775 (4th Cir. 1972). In the present case, the evidence, though conflicting, provides substantial support for the Commissioner's findings with respect to plaintiff's impairments and residual functional capacity. Under such circumstances, the decision of the Commissioner should be affirmed.

## RECOMMENDATION

In light of the foregoing, it is **RESPECTFULLY RECOMMENDED** that plaintiff's motion for judgment on the pleadings be denied, that the like motion of defendant be granted and the decision of the Commissioner affirmed.

Plaintiff and defendant are hereby notified that a copy of these Findings and Recommendation will be submitted to the Honorable Robert C. Chambers, United States District Judge, and that, in accordance with the provisions of Rule 72(b), Fed.R.Civ.P., the parties may, within thirteen days of the date of filing these Findings and Recommendation, serve and file written objections with the Clerk of this Court, identifying the portions of the Findings and Recommendation to which objection is made and the basis for such objection. The judge will make a de novo determination of those portions of the Findings and Recommendation to which objection is made in accordance with the provisions of 28 U.S.C. §636(b) and the parties are advised that failure to file timely objections will result in a waiver of their right to appeal from a judgment of the district court based on such Findings and Recommendation. Copies of objections shall be served on all parties with copies of the same to Judge Chambers and this Magistrate Judge.

The Clerk is directed to file these Findings and Recommendation and to transmit a copy of the same to all counsel of record.

DATED: November 2, 2006

MAURICE G. TAYLOR, JR.
UNITED STATES MAGISTRATE JUDGE