IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF WEST VIRGINIA

HUNTINGTON DIVISION

LENORE SCARBERRY,

    Plaintiff,

v.                                                         CIVIL ACTION NO. 3:05-310

JO ANNE B. BARNHART,
Commissioner of Social Security,

    Defendant.

**MEMORANDUM OPINION AND ORDER**

    Pending before the Court is Plaintiff's Objections to Magistrate Recommendation. Plaintiff objects to the findings and recommendation on two grounds: first, she contends Magistrate Taylor improperly dismissed Plaintiff's claim that the ALJ failed to properly consider Plaintiff's mild retardation; and second, Magistrate Taylor failed to properly consider the combined effects of Plaintiff's impairments when he upheld the ALJ's determination that she was not disabled. The Court finds Plaintiff's mild retardation was properly considered and there is substantial evidence that she is not disabled due to her borderline intelligence tests. Further there is an absence of clinical evidence to support a finding of disability due to the combined effects of Plaintiff's ailments. The Court **DENIES** Plaintiff's Objections and **ADOPTS** the findings and recommendation.

*Background*

    Plaintiff is 55 year old woman with a high school education and has worked as a house keeper at a hospital, food service worker, and secretary. (Soc. Sec. R. 23.) On May 22, 2003

Plaintiff filed her application for disability commencing January 5, 2003, the last day she worked before being admitted to the hospital on January 7, 2003. (Soc. Sec. R. 17-18, 81.) Plaintiff sought disability status due to "chest wall pain, depression, shortness of breath, nervousness and back pain." (Soc. Sec. R. 18.)

In January 2003 Plaintiff was hospitalized for a month for treatment of pneumonia, a pulmonary abscess and empyema requiring decortication and drainage, septic shock and a collapsed lung. (Soc. Sec. R. 18, 81.) Dr. Rebecca Wolfer, a thoracic surgeon, treated Plaintiff in her follow up visits. Her recovery was reported as good and on March 21, 2003 Plaintiff reported she could do whatever she wanted at home. (Soc. Sec. R. 19.) Dr. Wolfer refused to fill out disability forms because, based on her examination related to the thoracotomy, she believed Plaintiff could return to work. (Soc. Sec. R. 171.) Dr. Steven Batiste, as Plaintiff's general doctor at the Holzer Clinic, also followed Plaintiff's recovery as well as treated her for GERD, hypothyroidism, anxiety, and depression. His notes reflect pain at the site of surgery as being the only ongoing problems related to the January hospitalization. Dr. Glen Imlay, also of the Holzer Clinic, treated Plaintiff for the site pain with medication, massage and injections which did lesson the pain, as well as her back pain. (Findings 2-3.)

In May 2003 Plaintiff complained of continuing pain around the scar when she moved her shoulder but reported she was able to get around. At this visit, Plaintiff expressed concern about getting back to work, Dr. Imlay indicated she would be not be returned to work until July. (Soc. Sec. R. 260.) On June 23, 2003 Plaintiff reported she started to experience back pain the week earlier. There was no accident or incident that triggered the pain. (Soc. Sec. R. 253-54.) Dr. Imlay prescribed physical therapy and pain medication for this problem. This alleviated the pain but did

not stop it completely. (Findings 3.) On August 13, 2003, an MRI was taken and showed disc degeneration and mild narrowing at the L1-2 level and "very minimal" narrowing and desiccation at L4-5 with a small to moderate right "posterior paracentral disk extrusion." Dr. Imlay noted the discrepancy between the MRI data that indicated the disk bulge was on the right with Plaintiff's symptoms on the left. An EMG on the left was considered normal. (Soc. Sec. R. 233, Findings 3.)

On November 3, 2003 Dr. Imlay detected some right shoulder tenderness, "slight" sensitivity of the scar and continued tenderness over the ribs. Plaintiff participated in physical therapy in early 2004 however ended the treatment since she thought it was of no benefit. (Findings 3-4.)

On January 12, 2004 Plaintiff underwent an independent evaluation by Dr. Jerry W. Scott. (Soc. Sec. R. 315.) Dr. Scott observed diffuse paraspinal tenderness and complaints of pain on the side of the body not being examined. (Soc. Sec. R. 316.) He also observed "cog-wheeling." Dr. Scott's conclusion was that Plaintiff had a history of lumbar disc herniation and recommended a neurosurgeon evaluate Plaintiff. (Soc. Sec. R. 318.) Dr. Scott noted that Plaintiff would not be able to return to her work as a housekeeper because of her "complaints of pain." (Soc. Sec. R. 318.)

A functional capacity assessment performed on August 8, 2003 indicated Plaintiff could perform light level work. (Soc. Sec. R. 188-94.) Two months later a second evaluation determined she could perform work at a medium level. (Soc. Sec. R. 210-17.) On February 13, 2004 Plaintiff underwent a functional capacity evaluation in which the evaluator noticed she was self-limited on every test based on subjective complaints, that she was emotional and exhibited pain behavior associated with non-organic origins of pain. (Soc. Sec. R. 287-88.) The evaluator noted she scored a five out of five on the Waddell's test for system magnification. (Soc. Sec. R. 22, 288.) The evaluator indicated she could work at a sedentary level. On March 8, 2004, after receiving the

3

results of the evaluation, Dr. Imlay gave an opinion that Plaintiff could return to work at a sedentary level as described in the evaluator's report. (Findings 5.)

On December 23, 2004, the administrative law judge ("ALJ") assigned to Plaintiff's claim found that Plaintiff was not disabled as defined in the Social Security Act. (Soc. Sec. R. 25.) The ALJ determined that the final functional capacity evaluation was not a valid measure of Plaintiff's abilities. The ALJ did not find Plaintiff credible and therefore did not accept her subjective pain as sufficient to support a finding of disability. In light of the objective evidence revealing Plaintiff's pulmonary symptoms had resolved within one year of the surgery, her ability to perform household duties and care for herself,[1] and Plaintiff's subjective description of pain, including her testimony, the ALJ determined that a limitation on Plaintiff's work to light level work was more persuasive than Dr. Imlay's restriction to sedentary duty. (Soc. Sec. R. 19-22.) The ALJ noted that Plaintiff does suffer degenerative disc disease of the lumber spine and chronic obstructive pulmonary disease. (Soc. Sec. R. 20, 24.) The impairments do not meet the impairments listed in Appendix 1, Subpart P, Regulations No. 4. (Soc. Sec. R. 20.) The ALJ determined Plaintiff is able to:

> lift or carry twenty pounds occasionally and ten pounds frequently . . .occasionally climb ramps and stairs, balance, stoop, kneel, crouch and crawl. She can never climb ladders, ropes, or scaffolds. She should avoid all exposure to unprotected heights and hazards and concentrated exposure to temperature extremes, smoke, fumes, pollutants, and odors.

(Soc. Sec. R. 22, 24.) The ALJ found that Plaintiff is unable to perform her past work, is "closely

---

[1] There is one indication that Plaintiff cared for herself and was able to perform household duties, as noted in the Psychological review. (Soc. Sec. R. 186.) At other times Plaintiff has indicated she has difficulty completing household chores and caring for herself without assistance from her daughter and husband. *See generally*, Soc. Sec. R. 91, 114, 350-51.

4

approaching advanced age," and has a high school education, although there are no transferable skills from her past relevant work. (Soc. Sec. R. 24.) Plaintiff would be able to seek a job as a "pricemaker, information clerk, receptionist, and order clerk." (Soc. Sec. R. 23, 24.)

Plaintiff also alleged she has psychological problems such as anxiety and depression. Plaintiff has been treated with medication and has not sought counseling. There has been improvement from the antidepressant medication. On September 21, 2004 Dr. David Frederick performed a consultative psychological evaluation for the Commissioner. (Soc. Sec. R. 322.) The evaluation described Plaintiff as well-motivated, able to interact well, serious, teary and anxious with a mildly labile affect. (Soc. Sec. R. 19, 323.) Plaintiff's memory was within normal levels, although judgment and concentration were moderately deficient. On Plaintiff's IQ tests she was within a borderline range, with a verbal score of 70, performance score of 80 and a full scale of 73. Dr. Frederick diagnosed a general anxiety disorder, major depressive disorder and borderline intellectual functioning with a provisional diagnosis of undifferentiated somatoform disorder. (Soc. Sec. R. 19, 325.) State agency psychologists determined Plaintiff had no severe mental impairment. The state psychologists did not review Dr. Frederick's report and assessment.

After reviewing all of the evidence, the ALJ determined Plaintiff did not have a severe mental impairment. The ALJ noted that Plaintiff's IQ scores fell within the parameters of Section 12.05C of the listing of Impairments. The listing has a requirement that the onset of mild mental retardation was before Plaintiff was 22 years old. The ALJ determination relied in part on Plaintiff's high school diploma, and past employment performance. (Findings 7.)

Plaintiff appealed the ALJ's determination. Magistrate Taylor reviewed the record and relied upon the ALJ's finding that Plaintiff was not credible to recommend Plaintiff's motion be denied.

Plaintiff objected to the Magistrate's Findings and Recommendation. First, Plaintiff challenges the determination that she is not mentally impaired. Next, Plaintiff argues the findings did not take in to account the combined effects of impairments and her treatments necessary for the pulmonary ailments. Lastly, Plaintiff argues that her mental condition of depression and anxiety should have been taken into account, rather than discounted because she failed to pursue psychiatric sessions due to lacking coverage of those sessions.

### *Standard of Review*

This Court must "make a *de novo* determination of those portions of the . . . [magistrate judge's] proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1)(C). The scope of this Court's review of the Commissioner's decision, however, is narrow: this Court must uphold the Commissioner's factual findings "if they are supported by substantial evidence and were reached through application of the correct legal standard." *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996)*; see also* 42 U.S.C. § 405(g) ("findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive"). Substantial evidence is "more than a mere scintilla" of evidence, but only such evidence "as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *see also Craig*, 76 F.3d at 589; *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966) ("If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is 'substantial evidence.'").

In conducting this review, this Court must also address whether the ALJ analyzed all of the relevant evidence and sufficiently explained her rationale in crediting or discrediting certain

evidence. *See Milburn Colliery Co. v. Hicks*, 138 F.3d 524, 528 (4th Cir. 1998); *see, e.g.*, *Murphy v. Bowen*, 810 F.2d 433, 437 (4th Cir. 1987) (remanding claim for disability benefits because ALJ did not adequately explain why he credited one doctor's views over those of another); *Gordon v. Schweiker*, 725 F.2d 231, 235 (4th Cir. 1984) (ALJ must "explicitly indicate[] the weight given to all of the relevant evidence"); *see also* 20 C.F.R. § 404.1527(b)-(d). Thus, while an ALJ is entitled to give less weight to an opinion or any portion of the evidence that is not supported by or is inconsistent with the other evidence in the record, such a finding must appear explicitly in the decision. *See* 20 C.F.R. §§ 404.1527(d)(3)-(4) and 416.927(d)(3)-(4).

It is the duty of the ALJ, however, not the courts, to make findings of fact and credibility determinations and to resolve conflicts in the evidence. *See Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). If, in the face of conflicting evidence, reasonable minds could differ as to whether a claimant is disabled, it is the Commissioner or his designate, the ALJ, who makes the decision. *Craig*, 76 F.3d at 589 (citing *Walker v. Bowen*, 834 F.2d 635, 640 (7th Cir. 1987)). "The issue before [this Court], therefore, is not whether [Plaintiff] is disabled, but whether the ALJ's finding that she is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law." *Craig*, 76 F.3d at 589 (citing *Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987)).

### *Analysis*

### A. Plaintiff did not satisfy her burden of proof:

The Social Security Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or has lasted or can be expected to last for a continuous period of not

less than 12 months." 42 U.S.C. § 416(i); *see also* 42 U.S.C. § 423(d)(1)(A) (providing definition for disability insurance benefits payment). The Commissioner or his delegate must follow the five-step sequential evaluation of disability set forth in the Social Security regulations. *See* 20 C.F.R. § 404.1520. The Commissioner must address whether (1) the claimant is working at a substantial, gainful activity; (2) the claimant has a severe impairment or combination of impairments that significantly limits the claimant's physical or mental ability to do basic work activities; (3) such impairment or combination of impairments meets or equals a listed impairment in the regulations; (4) such impairment or combination of impairments prevents the claimant from doing past relevant work; and, (5) considering the claimant's residual functional capacity, age, education, and past work experience, such impairment or combination of impairments prevents the claimant from doing any other work. *Id.*; 20 C.F.R. § 416.920 (same). This five-step evaluation process was followed by the ALJ in the instant case. (Soc. Sec. R. at 18-20.)

In order for a claimant to be declared disabled, steps one and two must always be resolved favorably to the claimant. *See* 20 C.F.R. §§ 404.1520 and 416.920. If step three is resolved favorably to the claimant, inquiry ends, and the claimant is declared disabled. *Id.* If step three is resolved unfavorably to the claimant, steps four and five must be resolved favorably to the claimant in order to find claimant disabled. *Id.* During the first four steps, the claimant bears the burdens of production and proof. *See* 42 U.S.C. § 423(d)(5); *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Hunter v. Sullivan*, 993 F.2d 31, 35 (4th Cir. 1992) (per curiam). If the claimant carries her burdens through the fourth step, the burdens shift to the Commissioner to prove that other work is available in the national economy that the claimant can perform despite her condition. *See Bowen*, 482 U.S. at 146 n.5; *Hunter*, 993 F.2d at 35. In the end, a claimant for benefits has the burden of proving her

disability. *Hall v. Harris*, 658 F.2d 260, 264 (4th Cir. 1981).

In this case, steps one and two of the analysis were satisfied by the evidence presented by the Plaintiff. Plaintiff was not working and does have severe impairments within the regulations, the ALJ noted the degenerative disc disease and chronic obstructive pulmonary disease. (Soc. Sec. R. 24.) Step three was not sufficiently proven by Plaintiff, and the ALJ determined the impairments were not listed in Appendix 1, Subpart P, Regulations No. 4. 20 C.F.R. Part 404, Subpart P, Appx. 1. The degenerative disc disease, lacked the neurological deficits that are required under Section 1.04A, as well as no evidence of forced vital capacity levels at or below the levels required under Section 3.02. The decision was based on an absence of clinical findings in the record to support Plaintiff's claim of a disability.

In regards to Plaintiff's claim that she had a borderline intelligence, the ALJ once again based his opinion on the failure of evidence to show that the Plaintiff had satisfied step three of the analysis. There is no evidence that the mild retardation was present before Plaintiff was 22 years old as required under 12.05. 20 C.F.R. Part 404, Subpart P, Appx. 1. This Court agrees the evidence shows she was able to graduate from high school and retain employment before her physical ailments. There is no evidence to show she is disabled from this finding of borderline intelligence. Further, although Plaintiff has shown that she has spoken to doctors regarding her depression and taken antidepressants that lessen her psychological problems she has failed to see a psychiatrist regarding these problems and her symptoms are based entirely on her word. The Court understand that Plaintiff states she was unable to see a psychiatrist due to financial concerns, although that does not lessen the burden on Plaintiff to show she has the ailment. The documentation submitted is by doctors who do not specialize in this area and are basing their

determination on her description of her symptoms.

**B. The ALJ found Plaintiff was not credible:**

An ALJ's assessment of a claimant's credibility regarding the severity of pain is entitled to great weight when it is supported by the record and complies with the law. *See Shively v. Heckler*, 739 F.2d 987, 989-90 (4th Cir. 1984). "While the pain caused by an impairment, independent from any physical limitations imposed by that impairment, may of course render an individual incapable of working, allegations of pain and other subjective symptoms, without more, are insufficient." *Craig v. Chater*, 76 F.3d 585, 592 (4th Cir. 1996) (citing *Myers v. Califano*, 611 F.2d 980, 983 (4th Cir. 1980)). Here the ALJ found Plaintiff was not creditable. He relied on her poor score on the Waddell test and her testimony at the hearing. (Soc. Sec. R. 22.)

Proper assessment of subjective complaints of pain, is a two-step process. *Craig*, 76 F.3d at 594. First, "there must be medical signs and laboratory findings which show that [a claimant has] medical impairment(s) which could reasonably be expected to produce the pain or other symptoms alleged . . . ." 20 C.F.R. § 404.1529(a); *see also* § 416.929(a); *Craig*, 76 F.3d at 594. Once this threshold question is determines, the review focuses on "the intensity and persistence of the claimant's pain, and the extent to which it affects her ability to work." *Craig*, 76 F.3d at 595; 20 C.F.R. §§ 416.929(c)(1) and 404.1529(c)(1).

The medical evidence submitted does not lend support to Plaintiff's claims of debilitating pain. The description of the location of back pain is inconsistent with the medical evidence provided by the MRI. Plaintiff has been described as self limiting and has shown to exaggerate her pain. In relation to her psychological problems, Plaintiff failed to pursue visits to a therapist. The evidence, that she suffers from a severe mental disorder that debilitates her, is only her description of the

problem to her treating physicians. Further, she is taking antidepressants that appear to be alleviating the symptoms. There is not substantial evidence to show that the ALJ was incorrect in his determination that Plaintiff was not disabled, event taken into account all of her claims of aliments.

Lastly, there was sufficient evidence submitted to indicate that there are employment opportunities for Plaintiff with her restrictions. The evidence does not show Plaintiff is disabled.

### *Conclusion*

For the aforementioned reasons, the Findings and Recommendation of Magistrate Taylor are **ADOPTED**. The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented parties.

        ENTER:    March 30, 2007

        ROBERT C. CHAMBERS
        UNITED STATES DISTRICT JUDGE